## No. 1179.

THE SIMMONS HARDWARE COMPANY ET AL. vs. J. E. McGUIRE, SHERIFF AND TAX COLLECTOR.

A law of a State cannot impose license taxes upon persons passing through, or coming into it merely for a temporary purpose, especially if connected with interstate commerce; nor can it impose such taxes upon property imported into it from abroad, or from another State, and not yet become part of the common mass of property therein.

A State cannot enact any law or establish any regulation effecting interstate commerce. Same would be an unauthorized interference with the power given to Congress over the subject.

Interstate commerce cannot be taxed at all by a State statute, even though *the same amount* of tax should be laid on domestic commerce, or that which is carried on solely within the State.

The negotiation of sales of goods, which are in *another* State, for the purpose of introducing them into the State, into which said negotiation is made, is interstate commerce.

That part of sec. 12 of act 101, of 1886, which declares that "all traveling agents offering any species of merchandise in this State for sale, or selling same by sample, or otherwise, shall pay * * a license of $50," is repugnant to paragraph three, section 8, article 1, of the United States Constitution, which declares that Congress shall have power to regulate commerce among the several States, and same is unconstitutional, and in so far as such traveling agents may represent principals domiciled in other States are concerned, the tax is null and void.

APPEAL from the Fifth District Court, Parish of Ouachita. *Richardson*, J.

---

*John T. Ludeling* for Plaintiffs and Appellants.

*Thomas O. Benton* for Defendant and Appellee.

---

The opinion of the court was delivered by

WATKINS, J.　Plaintiffs are merchants domiciled and doing business in the City of St. Louis, State of Missouri, and in the prosecution of same, they are and have been importing their goods and wares into this State for sale in unbroken packages, through their traveling agents, or drummers, who travel therein soliciting customers and making sales by samples.

They aver that they have paid all licenses and taxes required of them as merchants in the State of Missouri, and the City of St. Louis, and claim the right to thus sell and dispose of their wares and merchandise, without the payment of any other license or tax, in this State.

They aver that defendant, as the sheriff and tax collector of the Parish of Ouachita, has demanded of their traveling agent, or drummer, a payment of $50 license for selling their goods as aforesaid, and upon his failure to pay the same, he has seized their property in satisfaction thereof.

In seeking to collect said tax, the defendant is acting under the authority of section 12, of act 101, of 1886, and this statute, plaintiffs insist, is repugnant to paragraph third, section 8, article 1, of the Constitution of the United States, which declares that Congress shall have

54

power to regulate commerce with foreign nations, and between the States; and same is unconstitutional, and the license tax void.

The sole question presented for consideration is the constitutionality *vel non* of the statute in question.

The chief reliance of the plaintiff's counsel is upon the recent decision of the Supreme Court in the case of Sabin Robbins vs. The Taxing District of Shelby County, Tennessee, not yet reported.

The facts of that case are that Robbins was engaged at the City of Memphis, in the State of Tennessee, in soliciting the sale of goods for the firm of Ross, Robbins & Co., of the City of Cincinnati, Ohio, who were dealers in stationery, and exhibited samples for the purpose of effecting sales.

There was a statute of that State which declared that "all drummers, and all persons not having a regular licensed house of business in the taxing district, offering for sale or selling goods * * therein by sample, shall be required to pay to the county trustees the sum of $10 per week, or $25 per month, for such privilege." Robbins failed to pay the $10 license, and was prosecuted therefor, and convicted, and on appeal to the Supreme Court of that State the sentence was affirmed. Thereafter the case was taken to the United States Supreme Court upon the ground herein assigned for the unconstitutionality of the statute of this State.

On this state of facts and upon the strength of various authorities that were cited, that court held that the following principles are established, viz.:

1st. That the Constitution having given to Congress the power to regulate commerce among the several States, that power is necessarily exclusive.

2d. That where the power of Congress to regulate is exclusive, the failure of Congress to make express regulations indicates its will that the subject shall be left free from any restrictions; and that any regulation of the subject by the States is repugnant to such freedom.

3d. The only way in which commerce between the States can be *legitimately* affected by State laws is when, by virtue of its police power, and its jurisdiction over *persons and property within its limits*, it provides for the security of life and property, or imposes taxes upon *persons residing within the State, or belonging to its population, or upon avocations pursued therein, not directly connected with foreign or interstate commerce.*

The court say: "But in making such internal regulations, a State cannot impose taxes upon *persons passing through the State, or coming*

*into it merely for a temporary purpose*, especially if connected with *interstate or foreign commerce;* nor can it impose such taxes upon *property imported into the State from abroad, or from another State*, and not yet become part of the common mass of property therein; * * and no regulations can be made directly affecting interstate commerce. Any taxation, or regulation of the latter character would be au unauthorized interference with the power given to Congress over the the subject."

The court then proceeds to discuss the facts of the case, and apply the principles of law enumerated, and then says: " To deny to the State the power to lay the tax, or require the license in question, will not, in any perceptible degree, diminish its resources, or its just power of taxation. It is very true that if the goods, when sold, were *in the State, and part of its* general mass of property, they would be liable to taxation; but *when brought into the State in consequence of the ·sale they will be equally liable;* so that, in the end, the State will derive just as much revenue from them as if they were there before the sale. * * But to *tax the sale* of such goods, or *the offer to sell* them, *before they are brought into the State*, is a very different thing, and seems to us clearly *a tax on interstate commerce itself.*

"It is strongly urged, as if it were a material point in the case, that *no discrimination* is made between domestic and foreign drummers— those of ·Tennessee and those of other States—that all are taxed alike. But that does not meet the law at all. *Interstate commerce cannot be taxed at all*, even *though the same amount of tax should be laid on domestic commerce,* or that which is carried on *solely within the State.*

> * * * * * * * * *

" The negotiation of sales of goods which are in another State for the *purpose of introducing them into the State in which the negotiation is made is interstate commerce.*

" A New Orleans merchant cannot be taxed there for ordering goods from London or New York, because, in the one case it is an act of foreign and in the other of interstate commerce, both of which are subject to regulation by Congress alone.

> * * * * * * * * *

" If the selling of goods by sample, and the employment of drummers for that purpose injuriously affects the local interests of the State, Congress, if applied to, will undoubtedly make such reasonable regulations as the case may demand. And Congress alone can do it; for it is obvious that such regulations should be based on a uniform system, applicable ·to the whole country, and not left to the varied,

Simmons Lardware Company et al. vs. Sheriff.

discordant, or retaliatory enactments of forty different States. The confusion into which the *commerce of the country* would be thrown by being subject to *State* legislation in this matter would be but a repetition of the disorder which prevailed under the articles of confederation."

These copious extracts from this luminous and most important decision of that enlightened tribunal show it to be of the greatest consequence to commercial relations between the States. It is upon this theory, exclusively, that it proceeds. It draws a line of demarcation between the persons and property over which a State has jurisdiction to exercise the taxing power and those over whom she has none. If the person sought to be taxed, or of whom a State license is required, be one who is merely passing through the State, or one coming into it for the temporary purpose of selling by sample goods to be imported from another State; or if the goods, the sale of which is thus negotiated, are imported into the State from another State, and not yet become a part of the mass of property therein, neither the person or property have become subjected to the taxing power of the State; and any State law imposing such a license tax is repugnant to the Federal Constitution, and void.

They say that this is no unjust restriction upon the taxing power of the States, but merely the subjection of the States to the Constitution of the United States in the matter of interstate commerce. It meets the objection that the law makes no unjust discrimination between *domestic* and *foreign* drummers—and that is perfectly true, in this instance—but that all are taxed alike, by announcing the underlying principle to be that interstate commerce cannot be taxed by the States at all, even though the same amount of tax or license should be laid on each class, or on that business which is carried on exclusively *within* the State. It is the negotiation in one State, by sample, of sales of goods in another State that cannot be taxed. The State license, or tax, is treated as being an unconstitutional restriction upon the *business* or calling of introducing into one State the goods and wares that are manufactured in another. The power of the State to tax interstate commerce was considered the leading and prominent feature of the law of Tennessee; and the statute of this State under consideration is very similar, if not an exact parallel.

On all questions appertaining to the construction of provisions of the United States Constitution and laws of Congress decisions of the Supreme Court are paramount to our own, and we regard it our duty to follow them. Hence under the interpretation it has placed on the

Tennessee statute, and the constitutional power of Congress to regulate interstate commerce, we feel constrained to pronounce that part of section 12, of act 101, of 1886, which declares that "all traveling agents offering any species of merchandise in this State for sale, or selling same by sample, or otherwise, shall pay a license of $50," repugnant to paragraph three, section 8, article 1, of the Constitution of the United States in respect to the plaintiffs; and that the license tax demanded of them is illegal.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed; and it is further ordred, adjudged and decreed that the plaintiffs' demand be sustained, their injunction reinstated, and perpetuated, and all cost be taxed against the defendant and appellee.